PERRY v. WOODWARD BOWLING ALLEY CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—EVIDENCE—BURDEN OF PROOF.

In proceedings under the workmen's compensation act for compensation for the death of an employee, the burden of furnishing evidence from which a fair inference can be drawn that the death resulted from the injury, is on claimant.[1]

2. SAME.

Evidence *held*, insufficient to sustain the burden of proof on claimant to show that the death of deceased, a pin setter in a bowling alley, was due to the fracture of his thigh bone caused by a flying pin.

Certiorari to Industrial Accident Board. Submitted April 9, 1917. (Docket No. 109.) Decided June 1, 1917.

Mary E. Perry presented her claim against the Woodward Bowling Alley Company and another for

[1] On application and effect of workmen's compensation acts generally, see comprehensive note in L. R. A. 1916A, 23.

the accidental death of her son in defendant's employ. From an order awarding compensation, defendant and the Ocean Accident & Guarantee Company, insurer, bring certiorari. Reversed, and award vacated.

*Florian, Moore & Wilson,* for appellants.

*McInerney & Bechtold,* for appellee.

KUHN, C. J. This is certiorari to review an award for compensation made by the industrial accident board of Michigan in favor of the applicant and against the respondents. The applicant is the mother of Charles Perry, deceased, who on the 3d day of February, 1914, was employed by the Woodward Bowling Alley Company of Detroit as a pin setter. On that date he was hit upon the thigh by a flying pin, which broke the femur, or thigh bone, and was taken to Grace Hospital. He was discharged from the hospital with the bone not entirely healed, and went to Rochester, N. Y., the home of his mother. There he went into the Municipal Hospital on Labor Day, 1914, where he died on September 13, 1914. On February 25, 1914, the deceased entered into an agreement in regard to compensation, which agreement was to the effect that the injured was to receive $5 per week. At the time of the injury he had been getting $10 per week. After his death, and on September 17, 1915, the applicant made application for adjustment of her claim to the industrial accident board, and on the 18th of October, 1915, the claim was arbitrated and an award made, granting the applicant $2.50 per week for the period of 268 2/7 weeks from September 13, 1914. Upon appeal to the full board this award was affirmed. The findings of fact of the board are as follows:

"The board finds that Chas. Perry was employed by the Woodward Bowling Alley Company on Febru-

ary 3, 1914, and received an injury arising out of and in the course of his employment on the above date, and died as a result of said injury on September 13, 1914. The board further finds that Mary E. Perry, mother of the deceased, was partially dependent upon Charles Perry, deceased, at the time of the accident."

Respondents contend that there are two questions for this court to determine, to wit: Was the injured's death the result of his accident? If so, was the amount of compensation awarded the correct one?

In the interpretation of the workmen's compensation law we held, in *McCoy* v. *Michigan Screw Co.*, 180 Mich. 454 (147 N. W. 572, L. R. A. 1916A, 323), that:

"The burden of furnishing evidence from which the inference can be legitimately drawn that the injury arose 'out of and in the course of his employment' rests upon the claimant."

The applicant and two physicians, who examined claimant's decedent at the time he was confined in the hospital at Rochester, were the only witnesses sworn in support of this claim. Dr. Wickens testified with reference to his examination, and upon being interrogated as to the cause of the death said:

"I didn't examine him to see what was the matter with him. I just examined his leg, and from my examination I couldn't say what was the cause of his death. I wasn't competent from my examination to express any opinion, because I examined nothing particular, but his leg, and that I did carefully."

Dr. Cornman, who made an X-ray picture of the fractured bone at the request of Dr. Wickens, testified as to what the X-ray picture disclosed as follows:

"*Q.* Doctor, was there anything in your examination, digital, ocular, or X-ray, which would lead you to believe that this man's death was a result of the fracture which you examined?

"*A.* I don't hardly think so."

The claimant testified with reference to her last visit to the hospital and said:

"The last day I saw him the nurse said he didn't feel like sitting up. He wanted to talk to me, and as he turned on his pillow I saw a large sheet of cotton, it alarmed me, and I said: 'What has happened?' And the attendant said he was out of the room, and he didn't know Charles couldn't use his limb, and he wanted to get up, and fell. There was a large cut on his head, about four inches. The undertaker wanted to know why it hadn't been sewed up. That was the last day I saw him alive. The next morning he was dead.

"*Q.* Whereabouts on the head?

"*A.* Just over the eye, and running back toward and over the ear.

"*Q.* This happened one night, and in the morning, about 24 hours later, he was dead?

"*A.* Yes."

A careful study of this record results in the conclusion that there was no evidence produced to warrant the finding of fact made by the board that the deceased died as a result of the injury which he sustained on February 3, 1914. In fact, the testimony of the physicians negatives any such inference. The record does disclose that the deceased sustained an injury, and during his disability received compensation; but it is further incumbent upon the claimant to show, by competent evidence from which fair inference could be drawn, that his death resulted from the injury. This the claimant has failed to do, and compensation for the death must therefore be denied.

The industrial accident board erred in awarding the compensation, and its determination must be, and is hereby, reversed and set aside.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.